IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MINNIE L. BELL,**  Case No. 1:24-cv-00455

            **Plaintiff,**

  **-vs-**  **JUDGE PAMELA A. BARKER**

**MIDLAND FUNDING LLC,**

            **Defendant.**  **MEMORANDUM OPINION & ORDER**

Before the Court is Defendant Midland Funding LLC's ("Midland") Motion to Dismiss filed on March 15, 2024. (Doc. No. 5.) On April 12, 2024, Plaintiff Minnie L. Bell ("Bell") filed an Opposition (Doc. No. 6) and a Motion for Judicial Notice of Adjudicative Facts. (Doc. No. 7.) On April 26, 2024, Midland filed a Reply in Support of its Motion. (Doc. No. 8.)

For the following reasons, the Court GRANTS Bell's Motion for Judicial Notice (Doc. No. 7) and GRANTS Midland's Motion to Dismiss. (Doc. No. 5.)

**I.**    **Procedural History**

On February 1, 2024, Bell filed a Complaint against Midland in the Cuyahoga County Court of Common Pleas. (Doc. No. 1-1.) She alleges that Midland wrongfully obtained a default judgment against her based on service it knew was incorrect and wrongfully garnished her wages to collect on that default judgment. (*See generally id.*, ¶¶ 31, 32.) On March 8, 2024, Midland removed Bell's case to this Court. (Doc. No. 1.)

On March 15, 2024, Midland filed a Motion to Dismiss Bell's Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 5.) On April 12, 2024, Bell filed an Opposition to Midland's Motion along with a Motion for Judicial Notice of Adjudicative Facts, seeking judicial notice of the

underlying state case where Midland obtained the default judgment and garnished Bell's wages. (Doc. Nos. 6, 7.) On April 26, 2024, Midland filed a Reply in support of its Motion to Dismiss. (Doc. No. 8.)

## II.  Factual Allegations

Bell sets forth the following factual allegations in her Complaint. (Doc. No. 1-1.)

On July 19, 2018, Midland filed a complaint against Bell in the Cleveland Municipal Court seeking a $3,611.46 money judgment. (*Id*. at ¶ 12.) Midland used "1300 Superior Avenue East, Cleveland, Ohio 44114" as Bell's address on the complaint and "instructed" the municipal court to serve Bell at that address. (*Id*. at ¶ 14.) 1300 Superior Avenue East is a 22-story high-rise apartment building in downtown Cleveland. (*Id*. at ¶ 15.) Midland "knew or should have known" that Bell's actual address was "1300 Superior Avenue East, *Apartment 1910*, Cleveland, Ohio 44114-2931" because the account statements it attached to its complaint show that as Bell's address. (*Id*. at ¶ 16 (emphasis added).)

Bell never received service of "the summons, complaint or any other pleading, court notice, or document" filed in the municipal court case "until her wages were garnished." (*Id*. at ¶ 18.) On January 23, 2019, Midland obtained a default judgment against Bell for $3,611.46. (*Id*. at ¶ 20.)

On January 29, 2020, Midland "initiated garnishment proceedings" against Bell. (*Id*. at ¶ 21.) In January 2024, "Bell learned that she did not earn enough to have her wages garnished" by Midland in the municipal court case. (*Id*. at ¶ 22.) Bell alleges that she intends to file a motion to vacate the default judgment in municipal court. (*Id*. at ¶ 25.)

Bell asserts three claims against Midland in her Complaint. First, she alleges that Midland violated the Ohio Consumer Sales Practices Act by "using a service address Midland knew was

2

incorrect and incomplete, and seeking a default judgment against her based on faulty service" and by "garnishing her wages when she did not earn enough disposable income to be subjected to a wage garnishment." (*Id*. at ¶¶ 31, 32.) Second, she alleges that Midland violated Ohio Revised Code § 2329.66(A)(13) by garnishing her wages that were exempt from garnishment. (*Id*. at ¶ 40.) Lastly, she brings a claim for "wrongful garnishment" based on Midland's "improper[]" default judgment and garnishment of her wages. (*Id*. at ¶ 48.)

**III.** **Law and Analysis**

    **A.** **Bell's Motion for Judicial Notice**

Along with her Opposition to Midland's Motion to Dismiss, Bell filed a Motion for Judicial Notice of the Cleveland Municipal Court proceedings. (Doc. No. 7.) She attached a copy of the municipal court docket to her Motion (Doc. No. 7-1), and she asks that the Court consider it because it "shows the dates that [Bell's] wages were garnished." (*Id*. at PageID# 81.) Midland does not oppose Bell's Motion for Judicial Notice. (Doc. No. 8, PageID# 97.)

Generally, a court may only consider the pleadings when ruling on a motion to dismiss. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023). Otherwise, a court must convert the motion to dismiss to a motion for summary judgment. *Id*. However, a court may "take judicial notice of 'matters of public record'" when undertaking a Rule 12(b)(6) analysis, but "only when the 'contents prove facts whose accuracy cannot reasonably be questioned.'" *Id*. (first quoting *Golf Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) then quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

Bell refers to the municipal court proceedings in her Complaint, both parties rely on the municipal court docket in their briefings, and neither party questions the accuracy of the municipal

3

court docket's contents. Accordingly, the Court grants Bell's Motion for Judicial Notice. The Court will consider the municipal court docket when analyzing Midland's Motion to Dismiss.

### B. 12(b)(6) Standard

Under Rule 12(b)(6), the Court accepts Bell's factual allegations as true and construes the Complaint in the light most favorable to her. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests." *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

    C.    **The Ohio Consumer Sales Practices Act**

Midland moves to dismiss Bell's first claim under the Ohio Consumer Sales Practices Act ("CSPA") because it is time-barred. (Doc. No. 5, PageID# 43.) Midland argues that the CSPA has a two-year statute of limitations. (*Id*.) And while the CSPA has a discovery rule, Midland contends that it does not apply to Bell's claim since it is for damages, not recission. (*Id*.) Therefore, Midland argues, Bell's claim accrued no later than January 29, 2020, when it filed for garnishment in Cleveland Municipal Court, and it expired two years later on January 29, 2022. (*Id*. at PageID# 44.)

Bell responds that Midland wrongfully garnished her wages up until July 2022. (Doc. No. 6, PageID# 65.) She argues that each disbursement to Midland of Bell's garnished wages was a "discrete violation of the CSPA." (*Id*. at PageID# 69.) And since she filed her Complaint within two years of the last disbursement, her claim is timely. (*Id*.)

Midland replies that the disbursements "cannot be fairly characterized as action taken by the creditor." (Doc. No. 8, PageID# 97.) And the last time Midland itself acted was September 29, 2020, when it filed for garnishment of Bell's personal earnings. (*Id*.) Her claim accrued no later than at that time, Midland argues, and is thus now time-barred. (*Id*.)

As an initial matter, a motion to dismiss generally "is an 'inappropriate vehicle' for dismissing a claim based upon a statute of limitations." *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464

(6th Cir. 2013). That is unless "the allegations in the complaint affirmatively show that the claim is time-barred." *Id*. For the following reasons, the Court concludes that Bell's Complaint affirmatively shows that her claim is time-barred.

In general, the CSPA prohibits "suppliers" from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices in connection with "consumer transactions." *See* Ohio Rev. Code §§ 1345.02 and 1345.03. Midland does not dispute that it is a "supplier" within the meaning of the CSPA. *See Taylor v. First Resolution Inv. Corp.*, 72 N.E.3d 573, 600 (Ohio 2016) (holding that debt collectors are suppliers). Nor does it dispute that its efforts to collect on Bell's debt were "consumer transactions" under the CSPA. *See id*. Therefore, the only question is whether the CSPA's statute of limitations bars Bell's claim.

The CSPA has a two year-statute of limitations when a plaintiff seeks damages, such as Bell seeks here. *See* Ohio Rev. Code § 1345.10(C). And the CSPA's statute of limitations begins to run "from the date of the occurrence of the violation." *Hoague v. Cottrill Servs., LLC*, 2024 Ohio App. LEXIS 518 at *26 (Ohio 5th Dist. Ct. App. Feb. 13, 2024). The CSPA violation may occur "before, during, or after the [consumer] transaction." Ohio Rev. Code §§ 1345.02(A) and 1345.03(A). Consequently, the date when the violation occurred is not necessarily the same date as the underlying transaction. *Hoague*, 2024 Ohio App. LEXIS 518 at *26.

On January 29, 2020, Midland filed for garnishment in the Cleveland Municipal Court for Bell's "other than personal earnings." (Doc. No. 7-1, PageID# 89.) Later, on September 29, 2020, Midland filed for garnishment for Bell's "personal earnings." (*Id*. at PageID# 88.) Bell did not file her Complaint until February 1, 2024, so both these garnishment filings are outside the limitations period. (Doc. No. 1-1.) But approximately every two weeks from September 29, 2020, until July 11,

2022, the municipal court received Bell's garnished earnings from her employer and disbursed the money to Midland. (*Id*. at PageID# 88-86.) Thus, Bell's claim would be timely if these post-February 2022 disbursements to Midland of Bell's garnished earnings are themselves violations of the CSPA.

Bell cites two CSPA cases and one case under the Fair Debt Collection Practices Act ("FDCPA")[1] that she contends support her argument that each garnishment disbursement is a discrete violation of the CSPA. The first case is *Keiber v. Spicer Constr. Co.*, 1999 Ohio App. LEXIS 2391 (Ohio 2d Dist. Ct. App. May 28, 1999). In *Keiber*, the plaintiffs contracted with the defendant to buy property and build a home. *Id*. at *2-3. At closing, the defendant had not built the home to the plaintiffs' satisfaction. *Id*. at *3. Over the following two years, the plaintiffs repeatedly called and wrote the defendant to complain about the problems with the home. *Id*. The defendants fixed some of the problems but not others. *Id*. Over two years after closing, the plaintiffs sued the defendant. *Id*. The defendant argued that the plaintiff's CSPA claim was time-barred. *Id*. at *15. The court rejected the defendant's argument because the defendant continued to represent to the plaintiffs after closing that it would make the necessary repairs. *Id*. at *15-16. The court found that each of these representations was a violation of the CSPA, so the statute of limitations was not triggered until two years after the last representation regardless of the closing date. *Id*. at *16.

In the second case, *Hofstetter v. Fletcher*, 905 F.2d 897 (6th Cir. 1988), the plaintiff purchased a life insurance policy from the defendant, who also promised the plaintiff that he would eliminate her federal income tax liability. *Id*. at 901. The insurer later ended its association with the defendant and fully refunded the plaintiff the premiums she had paid on the policy. *Id*. Yet the defendant

---

[1] Bell contends that "decisions arising under the [FDCPA] are analogous and helpful . . . because a violation of the FDCPA will also typically be a violation of the CSPA. (Doc. No. 6, PageID# 65.)

continued to provide the plaintiff improper tax advice. *Id*. The Sixth Circuit found that the defendant's "continued assurances" that the plaintiff did not have to pay any taxes and "blatantly improper advice" were discrete violations of the CSPA. *Id*. at 906. Therefore, the plaintiff's claim was timely even though these violations occurred more than two-years after the defendant sold the plaintiff the life insurance policy that was the "transaction." *Id*. at 906-07.

The final case Bell cites, *Purnell v. Arrow Fin. Servs., LLC*, 2008 U.S. App. LEXIS 25488 (6th Cir. Dec. 16, 2008), arose under the FDCPA. There, the plaintiff sued the defendant for falsely reporting a debt to a credit reporting agency. *Id*. at *4. The defendant made the original report and some subsequent reports outside the statute of limitations period. *Id*. at *3. But the defendant continued to falsely report the debt within the statute of limitations period. *Id*. The Sixth Circuit concluded that each allegedly false report of the plaintiff's debt within the limitations period could "constitute a discrete violation of the FDCPA," if proven. *Id*. at *14.; *see also Midland's Radford v. Equifax Info. Servs., LLC*, 2022 U.S. Dist. LEXIS 211985 at *5 (N.D. Ohio Nov. 22, 2022) (citing *Purnell* and concluding that "Midland's alleged repeated incorrect reporting of the account within the one-year statute of limitations period constitutes discrete violations, and they are not time-barred").

The common thread in these cases is that the defendant *continued to act* after the original alleged violation in ways that were themselves discrete violations of the CSPA or FDCPA, such as by continuing to promise to make repairs, or by continuing to offer improper tax advice, or by continuing to falsely report a debt. These cases instruct that the defendant's continuing or subsequent "violations that occur within the limitations window must be discrete violations; they cannot be the later effects of an earlier time-barred violation." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 259 (6th Cir. 2014) (citing *Purnell*, 2008 U.S. App. LEXIS 25488 at *12) (analyzing FDCPA).

8

Here, Midland's only alleged acts are "seeking a default judgment against [Bell] based on faulty service," and then collecting on that judgment by filing to garnish Bell's "other than personal" and, later, "personal earnings." (Doc. Nos. 1-1, ¶¶ 31, 32; Doc. No. 7-1, PageID# 88-89.) Bell does not allege in her Complaint that the subsequent disbursements of her garnished earnings to Midland were acts by Midland. Rather, based on the municipal court docket—which Bell requested that the Court consider—Midland passively received Bell's garnished earnings without any further action on its part. Therefore, the disbursements are the "later effects" of Midland's "earlier time-barred [alleged] violation" of filing for garnishment. *Slorp*, 587 F. App'x at 259; *see also Daniel v. US Restoration & Remodeling, Inc.*, 2014 Ohio Misc. LEXIS 9626 at *7 (Ohio Franklin Ct. Com. Pl. Oct. 23, 2014) (citing *State ex rel. Nickoli v. Erie Metroparks*, 923 N.E.2d 588, 594 (Ohio 2010)) (rejecting argument that the retention of a mechanic's lien was a continuing violation of the CSPA and concluding that the defendant's alleged violation of the CSPA occurred when it filed the mechanic's lien).

Accordingly, the latest possible date that Bell's claim accrued is September 29, 2020, when Midland filed for garnishment of Bell's personal earnings. Since that date is more than two years before Bell filed the instant Complaint, her CSPA claim is time-barred.

### D.  Ohio Revised Code § 2329.66(A)(13) and 15 U.S.C. § 1673(a)

Midland moves to dismiss Bell's second claim under 15 U.S.C. § 1673(a) and Ohio Revised Code § 2329.66(A)(13) because neither statute provides a private cause of action. (Doc. No. 5, PageID# 45.)

In her Opposition, Bell asks that the Court infer a private cause of action under Ohio Revised Code § 2329.66(A)(13). (Doc. No. 6, PageID# 69.) She does not address Midland's argument that

9

15 U.S.C. § 1673(a) does not provide a private cause of action and instead asserts that 15 U.S.C. § 1673(a) "is incorporated by reference into Section 2329.66," such that "[i]t is entirely consistent with the purposes of Section 2329.66 to infer a private cause of action." (*Id.*)

No Ohio court has inferred a private cause of action under Ohio Revised Code § 2329.66(A)(13). Since the Supreme Court of Ohio "has not spoken," this Court must "discern, from all available sources, how that court would respond if confronted with the issue." *Miles v. Kohli & Kaliher Assocs.*, 917 F.2d 235, 241 (6th Cir. 1990). For the following reasons, the Court concludes that Ohio courts would not infer a private cause of action under Section 2329.66(A)(13).

Ohio courts will only infer the existence of a private cause of action when "the Ohio General Assembly manifests a 'clear implication' for private causes of action." M*cClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 328 (6th Cir. 2006) (citing *Fawcett v. G. C. Murphy & Co.*, 348 N.E.2d 144, 147 (Ohio 1976)). Ohio courts consider the following three factors to determine whether there is a "clear implication" for a private cause of action: "(1) whether the plaintiff is within the class for whose benefit the statute was enacted, (2) whether the statute reflects the legislature's intent to create or deny a remedy through a private right of action, and (3) whether inferring such a remedy is consistent with the purposes of the statute." *City of Maple Heights v. Netflix, Inc.*, 215 N.E.3d 500, 506 (Ohio 2022). While the first factor weighs in favor of Bell, the second and third factors weigh decisively against her.

First, Bell is within the class meant to benefit from the statute. She is a "person who is domiciled in this state [(Ohio)]" and who "may hold property exempt from . . . garnishment." Ohio Rev. Code § 2329.66(A). But under the second factor, nothing in the statute reflects that the General Assembly intended to create a remedy through a private cause of action for a violation of Section

2329.66. Bell contends that since the statute "does not expressly preclude" a private cause of action, it necessarily establishes one. (Doc. No. 6, PageID# 69.) However, not precluding a private cause of action does not mean the General Assembly implicitly intended to create one.

Lastly under the third factor, inferring a remedy would not be consistent with the purposes of the statute. Bell argues that since Section 2329.66 incorporates 15 U.S.C. § 1673 it would be consistent with Section 2329.66's purposes to infer a private cause of action. (Doc. No. 6, PageID# 69.) But 15 U.S.C. § 1673 does not provide a private cause of action. *See Ward v. Thompson*, 2015 U.S. Dist. LEXIS 83662 at *32 (W.D. Mich. June 29, 2015) (collecting cases). So, its incorporation into Section 2329.66 reinforces the conclusion that Section 2329.66 itself does not provide a private cause of action.

As two of the three factors weigh against inferring a private cause of action under Ohio Revised Code § 2329.66(A)(13), the Court dismisses Bell's second claim.

E. "Wrongful Garnishment"

Midland moves to dismiss Bell's third claim for "wrongful garnishment" because "there exists no such claim under Ohio law, whether under statute or common law." (Doc. No. 5, PageID# 48.) It suggests that Bell's claim for wrongful garnishment is "more accurately termed a claim for malicious prosecution." (*Id*.) Nonetheless, such a claim would fail, Midland argues, because Bell does not allege that Midland lacked probable cause to sue her in municipal court or that the municipal court lawsuit ended in her favor. (*Id*. at PageID# 48-49.)

Bell responds that Ohio law does in fact recognize a claim for wrongful garnishment. (Doc. No. 6, PageID# 70.) She cites *Sharp v. Shelby Mut. Ins. Co.*, 239 N.E.2d 49, 52 (Ohio 1968), and contends that the plaintiff in that case brought a claim for wrongful garnishment. (*Id*.) She argues

that although the Supreme Court of Ohio decided *Sharp* on procedural grounds, "there was no discussion in the decision holding that Ohio does not recognize a claim for wrongful garnishment." (*Id*.)

While the plaintiff in *Sharp* sued for wrongful garnishment, the garnishment suit she was attacking was "instituted by [the defendant] in *Georgia*." 239 N.E.2d at 52 (emphasis added). The plaintiff alleged that the *Georgia* "garnishment suit was spurious." *Id*. And according to the plaintiff, "*under Georgia law*, [the defendant] is obligated to plaintiff for double damages for the alleged wrongful garnishment." *Id*. (emphasis added). The court did not analyze the validity of the plaintiff's wrongful garnishment claim, but even if it had, it would have been applying Georgia law. The court in *Sharp* thus did not recognize a claim for wrongful garnishment under Ohio law.

Because Ohio does not recognize a claim for "wrongful garnishment" and Bell has otherwise failed to include allegations stating a plausible claim for the alleged wrongful garnishment of her earnings, the Court dismisses Bell's third claim.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Bell's Motion for Judicial Notice (Doc. No. 7) and GRANTS Midland's Motion to Dismiss (Doc. No. 5).

**IT IS SO ORDERED.**

Dated: June 7, 2024

    *s/ Pamela A. Barker*
PAMELA A. BARKER
UNITED STATES DISTRICT JUDGE

12